## Miller and May, Partners, et al. v. City of Central City.

(Decided January 11, 1918.)

### Appeal from Muhlenberg Circuit Court.

Intoxicating Liquors—License — Refunding or Recovering. — One holding a license to conduct a saloon, granted by a municipality, and who by agreement with the county officials on account of criminal prosecutions, closes his saloon before the expiration of the license granted by the city, may not have of the city a pro tanto recovery of the license tax.

FREEMAN & STROUD for appellants.

WALKER WILKINS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Miller and May for many years were engaged in the saloon business in Central City. On September 28th, 1912, a local option election was held, whereby that territory became dry. Their licenses, however, for that year did not expire until December, at which time they applied for and took out a new license for another twelve months; and, again, on the expiration of the second license they applied for and took out, in December, 1913, a license good until December 5th, 1914. In the meantime the local op-

tion election had been contested by the wets and tried out before the Board of Election Commissioners, who upheld the election. It was then appealed to the circuit court, which affirmed the finding of the election commissioners, and from the circuit court it was appealed to this court, a supersedeas having been executed, staying the proceedings of the county court upon the election. The local option election was held valid by this court, and mandate issued April 25th, 1914. On April 27th a certificate of election was issued by the canvassing board, and this certificate, with proper orders, adjudging valid said election, were spread of record on the order books of the Muhlenberg county court. The county attorney and judge of the quarterly court were endeavoring by prosecutions to stop the sale of intoxicating liquors in Central City, and had issued a number of warrants against appellants and other saloon keepers, charging them with the unlawful sale of whisky in that city. Some trials were had on these warrants and a conviction resulted in each case, but neither of appellants was tried. On May 1st, 1914, appellants along with other saloon keepers agreed with the county attorney to and did close up their saloons and ceased to operate the same. At that time appellants held a saloon license granted them by the city authorities, authorizing them to operate a saloon for the year ending December 5, 1914. The city authorities did not interfere with appellants in the operation of their saloons nor did they ask or require them to close their business. It was only the county authorities who attempted this. However, on July 7, 1914, the city council of Central City passed an ordinance prohibiting the sale of intoxicants by persons without a license within the municipal corporation, but the saloons had all been closed long before that by agreement with the county attorney.

This action was instituted by Miller and May, holders of a saloon license, to recover of the city, *pro tanto,* for the 202 days which they allege they were prohibited from operating their saloon before the expiration of said license on December 5, 1914.

Can a keeper of a saloon who has obtained from a municipality, in consideration of one thousand ($1,000) dollars per year, a license to carry on his business, have of the city a *pro tanto* recovery of the one thousand ($1,000) dollars license tax, if he, to avoid a multiplicity

of criminal prosecutions, agrees with officials other than those of the city, to and does close his saloon 202 days before the expiration of the life of the license? This is the real question in this case and the one this action was intended to determine. We must answer it in the negative.

The city and its officials did not attempt to close appellants' saloon, or to prevent them from selling liquor under the license which appellants held. The county authorities, however, did issue warrants against appellants and caused their arrest, but these officials acted upon their own initiative and entirely without encouragement or authority from the municipal officials. The saloon men had the undoubted right to continue the sale of liquor until the expiration of their license and this question had been well settled by this court, and appellants should not have voluntarily relinquished their right to conduct a saloon especially when the courts had determined the question in their favor. Whether appellants would be entitled to a recovery had the city officials themselves prevented the operation of the saloon it is unnecessary here to decide.

Appellants contend that they involuntarily relinquished their right to carry on the saloon business and that an analogy between an involuntary relinquishment, such as this, and an involuntary payment of a license tax wrongfully assessed, exists. It is well settled that where a licensee, under protest, pays a tax to prevent the immediate seizure of his person or property, or to obtain his release after his arrest, such payment will be considered involuntary and its recovery will be permitted. But there is no analogy between the case at bar and those cited by appellants, supporting the principle just stated. In this case the saloon keepers were being prosecuted by county officers, and to avoid these criminal prosecutions appellants by agreement with the county attorney relinquished their right to continue in the saloon business. With this, Central City and its officials had nothing to do and were in no manner responsible. The law upon the subject of sales by licensees after the territory is voted dry and before the expiration of the license, was well settled by this court, and the legal profession in this Commonwealth was fully acquainted therewith. While it is alleged by plaintiff below that they could not get attorneys to definitely advise them as to their right

to sell liquor after the entry of the certificate of election, it can not be doubted that many lawyers in Muhlenberg county and elsewhere in Kentucky were well acquainted with the law as announced in the cases of Watts v. Commonwealth, 78 Ky. 329, and ,eehan v. Louisville & Nashville Railroad, 125 Ky. 478. Moreover, in the case of May v. Commonwealth, 160 Ky. 785, to which one of the appellants was a party, the doctrine of the case of Watts v. Commonwealth, *supra,* was reaffirmed and it was made quite plain that the licensee had the right to continue the sale of intoxicants during the period for which he had a license. This opinion was rendered and published subsequent to the filing and entry of the election certificate, but previous to the expiration of the license held by appellants.

Appellants' petition contained almost three pages of irrelevant and redundant matter which the lower court upon motion properly struck out. Leave was then given to amend the petition, but the petitioners declined to plead further; thereupon, the circuit court sustained a demurrer to the petition and dismissed the action. There can be no serious controversy as to the correctness of the ruling of the circuit court in sustaining the motion to strike, nor can it be urged that the allegations which remained in the petition were sufficient to constitute a cause of action. This being true, the circuit court properly sustained the demurrer and dismissed the action.

Judgment affirmed.